McLELLAN *v.* PLEDGER, COUNTY TREASURER.

4-7714                                        189 S. W. 2d 789

Opinion delivered October 22, 1945.

*Fred A. Isgrig* and *Jno. S. Gatewood,* for appellant.

*Sam M. Levine, A. F. Triplett, John W. Moncrief* and *W. B. Alexander,* for appellee.

McFADDIN, J.   The appellants, as taxpayers, filed suit in the Jefferson Chancery Court against A. C. Pledger, County Treasurer of Jefferson county; L. T. Sallee, County Clerk of Jefferson county; and Jack Segars, as Court Reporter of the Fourth Chancery District.   We copy the complaint in full:

"The petitioner, and plaintiff, James McLellan, is a taxpayer and states that he is a resident of Jefferson county, Arkansas, and that he sues for himself as such taxpayer and for other taxpayers in said county similarly situated and to protect the inhabitants of said county from illegal exactions.

"The defendant, A. C. Pledger, is County Treasurer of said county, and the defendant, L. T. Sallee, is County Clerk of said county and that the defendant, Jack Segars, is court reporter for the Chancery Court of the Fourth Chancery District.

"Prior to March 4, 1943, when Act 139 of the General Assembly of Arkansas was approved, and by virtue of emergency clause attached thereto, became effective, the salary of the County Treasurer of Jefferson county

was $............... per annum;·that said Act attempted to raise said salary to $3,600,·and in addition thereto made provision for the payment to the said County Treasurer the sum of $1,950 to be used by him 'as his best judgment dictated.' Said Act provided that its provisions should apply only to such counties as were then shown by the last Federal census to have a population of not less than 65,000 and not more than 65,250 and the assessed valuation of real and personal property of which county according to the records in the Arkansas Corporation Commission of not less than $16,000,000 and not more than $16,200,000.

"Petitioners state that Jefferson county is the only county in the State of Arkansas with a population of not less than 65,000 and not more than 65,250 according to the last Federal census, and that it is the only county in the state with an assessed valuation of real and personal property of not less than $16,000,000 and not more than $16,200,000 and that at the time of the passage and approval of said Act by the Arkansas Legislature or General Assembly Jefferson county was the only county in the State having such population and the assessed value of whose property, real and personal, was not less than $16,000,000 and not more than $16,200,000. Petitioner therefore states that said act was local and special and in contravention and in violation of Amendment No. 14 to the Constitution of the State of Arkansas, and is therefore·void.

## II.

"Petitioner states that defendant, Jack Segars, as court reporter for the Chancery Court of the Fourth Chancery District, prior to approval of Act 65 of the Arkansas Legislature 1943 February 17, 1943, received a salary of $1,800 per annum, $1,200 of which salary was paid by Jefferson county and $600 was payable by other counties in said Chancery District. That under said Act 65 of the 1943 session of the Arkansas Legislature salary of said reporter was raised to $3,000 per annum, of which salary $2,100 is payable by the county of Jefferson. That said Act provided that it should apply only to Chancery

Districts whose largest county had a population of not less than 65,000 and not more than 65,250. That the Fourth Chancery District is the only Chancery District in the State having a county to which such limitations of population apply, and that said Act 65 is special act in contravention and violation of Amendment 14 to the Constitution of the State of Arkansas and void.

"That said two acts were and are void for reasons above alleged, petitioners state that all warrants drawn by the County Clerk of Jefferson county on the Treasury of Jefferson county, since the said void acts took effect for amounts in excess of salaries previously provided for were unauthorized and that the payment of said warrants by said treasurer were unauthorized and contrary to law, and that unless restrained, the county clerk will continue to issue his warrants to the defendants, A. C. Pledger and Jack Segars, for payment of such unlawful salaries and that said Treasurer will continue to pay said unlawful salaries out of funds in his hands belonging to the taxpayers of Jefferson county, and that petitioner and other taxpayers of Jefferson county will suffer irreparable loss and injury thereby; petitioners are without adequate remedy at law.

"Wherefore, premises considered, plaintiff and petitioners pray that the defendant, L. T. Sallee, County Clerk of Jefferson county, be restrained and enjoined from issuing any warrant or other authority to the Treasurer of Jefferson county for the payment of any sum of the defendant, A. C. Pledger, and to the defendant, Jack Segars, in excess of salaries due each of them before the passage of said Acts 139 and 65;

"That the defendant, A. C. Pledger as Treasurer, be restrained and enjoined from paying any voucher, warrant or other authorization issued to the defendants, A. C. Pledger and Jack Segars, for salaries attempted to be created by said two Acts;

"That a temporary restraining order be issued by this court to this effect and that upon final hearing said

injunction be made permanent, and for all other and proper relief."

To this complaint, the defendants filed separate demurrers, claiming:

(1) Chancery was without jurisdiction; and

(2) The facts alleged were insufficient to constitute a cause of action.

The Chancery Court sustained the demurrers, and the plaintiffs elected to stand on the complaint. From final judgment dismissing the complaint there is this appeal:

1. *Chancery Jurisdiction.* Appellees insist that the Chancery Court was without jurisdiction, as the plaintiffs had a remedy at law—*i. e.*, appeal from the County Court order allowing a claim or salary warrant under either of the acts. Appellees cite *Bowman* v. *Frith,* 73 Ark. 523, 84 S. W. 709; and *Sadler* v. *Craven,* 93 Ark. 11, 123 S. W. 365, to sustain their contention. But in *Bowman* v. *Frith* it was pointed out that a taxpayer could not proceed in equity to prevent a county from entering into a contract claimed to be improvident, but could proceed in equity to restrain the county from entering into a void contract. *Fones Hardware Co.* v. *Erb,* 54 Ark. 645, 17 S. W. 7, 13 L. R. A. 353, was there cited as authority for such equitable proceeding in the case of a void contract. In the case at bar it was alleged that the legislative acts were *void;* so the Fones case applies, rather than the Bowman case. *Sadler* v. *Craven, supra,* involved an attack on an allegedly improvident contract, and not one claimed to be void. In short, the cases cited on this point by appellees are without application.

Article XVI, § 13 of the Arkansas Constitution says: "Any citizen of any county, city or town may institute suit in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions whatever." Under this constitutional provision we held in *Farrell* v. *Oliver,* 146 Ark. 599, 266 S. W. 529, that a taxpayer could maintain a suit

in equity to restrain the State Auditor from drawing warrants on the State Treasury to pay illegal appropriations. Chief Justice McCulloch there said:

"There is eminent authority for holding, even in the absence of an express provision of the Constitution, such as that referred to above, that a remedy is afforded in equity to taxpayers to prevent misapplication of public funds on the theory that the taxpayers are the equitable owners of public funds and that their liability to replenish the funds exhausted by the misapplication entitle them to relief against such misapplication. *Fergus* v. *Russell*, 270 Ill. 20, 110 N. E. 130, Ann. Cas. 1916B, 1120."

This language was quoted with approval in our recent case of *Samples* v. *Grady*, 207 Ark. 724, 182 S. W. 2d 875. In *Grooms* v. *Bartlett*, 123 Ark. 255, 185 S. W. 282, Mr. Justice Hart, in sustaining the chancery jurisdiction, said: "The taxpayers of a county are the persons from whom the public revenues are obtained and are directly interested in protecting the same. They are proper persons to maintain suits against public officers to prevent or remedy misapplication of the public funds, and in such cases chancery has the power to grant affirmative as well as injunctive relief."

In *Independence County, et al.,* v. *Thompson, et al.,* 207 Ark. 1031, 184 S. W. 2d 63, we sustained the chancery jurisdiction in a suit by a taxpayer to prevent the unlawful expenditure of public funds. That case is ruling here, and it therefore follows that the Chancery Court had jurisdiction in the case at bar.

II. *Constitutional Amendment No. 14.* Appellants insist that the acts here under attack are local acts, and therefore violative of Amendment No. 14 to our State Constitution. This Amendment No. 14 was adopted by the people at the 1926 general election, and reads:

"The General Assembly shall not pass any local or special act. This amendment shall not prohibit the repeal of local or special acts."

Many cases involving this amendment have been before this court. We mention only a few: *Webb* v. *Adams,*

180 Ark. 713, 23 S. W. 2d 617; *Smalley* v. *Bushmiaer,* 181 Ark. 874 and 1147, 31 S. W. 2d 292 and 203; *Cannon* v. *May,* 183 Ark. 107, 35 S. W. 2d 70; *Simpson* v. *Matthews,* 184 Ark. 213, 40 S. W. 2d 991; *State ex rel. Burrow* v. *Jolly,* 207 Ark. 515, 181 S. W. 2d 479. In considering the acts here under attack in the light of Amendment No. 14, we consider each enactment separately.

A. *Act No. 139 of 1943.* This act involves the salary of the Treasurer of Jefferson county, and attempts to be a general act by classifying a county by population and also assessed valuation. The complaint alleges— and the effect of the demurrer is to admit—that even with this classification, the act applies only to Jefferson county. In *Simpson* v. *Matthews, supra,* there was an attempt to disguise a local act by using population as a basis of classification. Mr. Chief Justice HART, in passing on this question, quoted the Supreme Court of Missouri:

" 'The section (act) in question may be a general law in form, but courts of justice cannot permit constitutional prohibitions to be evaded by dressing up special laws in the garb and guise of general statutes.' "

That language applies here, for the assessed valuation is only another guise, in addition to the population figure. The act is local. In *State ex rel. Burrow* v. *Jolly, supra,* there was under consideration an act of the legislature which applies to counties having a population of between 18,300 and 18,350. Randolph county alone was in that classification. The Circuit Court held that the act violated Amendment No. 14, and was therefore void. We affirmed the Circuit Court, saying:

"Restrictions have the inevitable and intended result of excluding other counties.

.  .  .  .  .

"If we should reverse the judgment in this case, effect would be to say that the General Assembly, in adopting Act 73 and similar measures, has found a permissible point of penetration into Amendment No. Fourteen.

"Our view is that the so-called 'classification' is but an attempt by technicality to evade what the courts have heretofore said the people meant when by amendment to the Constitution they struck at the evil flowing from local and special laws."

The quoted language applies here. Stripped of its disguises, Act 139 of 1943 is only a local act, and therefore violates Amendment No. 14 and is void.

B. *Act 65 of 1943.* This act relates to the salary of the Court Stenographer of the Fourth Chancery District. The act uses the same disguises as to population as does Act 139 of 1943. The complaint alleges, and the demurrer admits, that the act applies only to the Fourth Chancery District in which Jefferson county is situated. The majority of this court, however, sustains the validity of Act 65 of 1943 under the authority of *Sebastian Bridge District* v. *Lynch,* 200 Ark. 134, 138 S. W. 2d 81, which followed *Buzbee* v. *Hutton,* 186 Ark. 134, 52 S. W. 2d 647; and *Waterman* v. *Hawkins,* 75 Ark. 120, 86 S. W. 844.

In *Waterman* v. *Hawkins,* Mr. Justice McCulloch said: "Statutes establishing or abolishing separate courts relate to the administration of justice, and are not either local or special in their operation. Though such an act relates to a court exercising jurisdiction over limited territory, it is general in its operation, and affects all citizens coming within the jurisdiction of the court."

In *Buzbee* v. *Hutton,* Mr. Special Justice Lamar Williamson quoted from the rehearing opinion of *Webb* v. *Adams,* 186 Ark. 134, 52 S. W. 2d 648, as follows: " 'In this connection we do not wish to be understood as impairing in the least the force of the decisions in *State* v. *Crawford,* 35 Ark. 237, which holds that a statute settling accounts between the State and certain parties is a general and not a special act; and in *Waterman* v. *Hawkins,* 75 Ark. 120, 86 S. W. 844, holding that statutes establishing or abolishing separate courts relate to the administration of justice, and are not either local or special in

their operation. This is in recognition of that principle of State sovereignty under which the State, through its Legislature, may protect its own interest, and by virtue of it the Legislature may treat every subject of sovereignty as within a class by itself, and bills of that kind are usually held to be general and not local or special laws. There are cases where the State, by its Legislature, commits the discharge of its sovereign political functions to agencies selected by it for that purpose, and such acts have usually been held to be general acts.' "

In *Sebastian Bridge District* v. *Lynch* there was involved, as here, an act fixing the salary of a Chancery Court Stenographer. The act was assailed, as here, on the ground that it was local legislation; but this court, in repelling the attack, said:

"The fees of the official reporter of the tenth chancery district are provided for by Act 181 of the Acts of 1937, which amended Act 175 of the Acts of 1925, under which the stenographer is allowed a fee of 50 cents upon each writ of summons, which is credited to the 'Stenographer's Fund Account' of that chancery district.

"It is objected that, inasmuch as Act 181 of the Acts of 1937 relates only to the tenth chancery district, it is void as violative of Amendment No. 14 to the Constitution, prohibiting local legislation. We do not think so. In the case of *Buzbee* v. *Hutton,* 186 Ark. 134, 52 S. W. 2d 647, it was held that an act making the office of the Pulaski chancery clerk appointive, instead of elective, was not unconstitutional as a local or special act, prohibited by Amendment No. 14 to the Constitution. This was there said to be so for the reason that statutes establishing or abolishing separate courts relate to the administration of justice, and are neither local nor special in their operation, and that the clerk is a vital part of the court organization. It is equally true that under modern conditions the court stenographer is also an essential officer in reporting the proceedings of the courts. 60 C. J., chapter, Stenographers, p. 21. Act 181 does not, therefore, offend against Amendment No. 14."

The case of *Sebastian Bridge District* v. *Lynch* is directly in point. In keeping with the holding in that case and the cases on which it is bottomed, the majority of this court has reached the conclusion (in which the writer does not agree) that the Act 65 of 1943 is valid.

It follows that Act 139 of 1943 is void, under the authority of *Burrow* v. *Jolly*, and that Act 65 of 1943 is valid, under the authority of *Sebastian Bridge District* v. *Lynch*. The decree of the Chancery Court is, therefore, affirmed as to Act 65 of 1943. As to Act 139 of 1943, the decree is reversed and the cause remanded, with directions to overrule the demurrer and proceed not inconsistently with this opinion. This being a chancery case, the court adjudges the costs of this court against the appellees.